[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This appeal and application for review of statement of compensation was returned to court on August 29, 1995. The application describes property taken by the City of Meriden on April 21, 1995, for the North Colony Industrial Park project. The property taken is known as 590 North Colony Street, Meriden, CT Page 4128 Connecticut. The applicants, the owners of the property, assert in their application that they are aggrieved by the statement of compensation and by the amount fixed as compensation and deposited in court. The respondent City of Meriden deposited the sum of $24,000 in court which the applicants have withdrawn. The court conducted a hearing, received testimony from applicant Haffner and his expert appraiser and from various officials of the City of Meriden and the City's expert appraiser and also viewed the premises. The court concludes that the applicants are aggrieved and are entitled to increased compensation, interest on the increase, an appraiser's fee and costs including an allowance for the testimony of the applicants' appraiser.
The property taken known as 590 North Colony Street contains 20,635 square feet of space, 0.47 acre, with 83 feet of frontage on North Colony Street. The parcel is zoned R3, which permits multiple-family dwellings. As of the date of the take, it was improved with the 720 square foot wood frame, three-bay garage building, constructed in 1980. The present owners acquired this property in 1978 in order to use it in conjunction with another property owned by them, also on North Colony Street, known as 569 North Colony Street. This property is also zoned R3, but a variance obtained in 1964 allows its use as a scrap metal junkyard. The subject property has been used to support the scrap metal junkyard operation since it was purchased in 1978.
The evidence at the hearing indicates that a good deal of this support has been nonconforming in violation of permitted R3 uses. The defendant City contributed to this situation when it granted the owners building permits for both a garage and a weight scale which were located and in use on the site for a lengthy period of time. Ultimately, the City caused the scale to be removed and demanded that the owners cease moving junk with a front end loader creating a junkyard. "Corte letter of 6/24/92" Plaintiffs' Exh. C. This letter also advised the owner that the location was to be used for the parking of vehicles only. Mr. Corte testified at the hearing that he had no objection to the storage of vehicles in the sited garage. Plaintiffs' appraiser testified and the court finds that because of the limited space at 569 North Colony Street the 590 North Colony site has been integral to the overall operation of the metal processing plant at 569 North Colony Street inasmuch as it provided parking for employees and customers which supported the operation of the scrap metal processing operation. Additional parking was essential for the metal processing plant or junkyard known as 569 CT Page 4129 North Colony Street since it is located on a smaller site, some 12,770 square feet with a frontage of 45 feet. This site is located approximately across the street from 590 North Colony Street. One of the owners, Mr. Haffner, testified that the availability of the parcel at 590 North Colony Street permitted employees and customers to park there. He also testified that the business used the garage on the site for storage and garaging of business vehicles and for other uses. The opinion of plaintiffs' appraiser is the predicate for his conclusion that the fair market value of 590 North Colony Street must be considered within the framework of a unity of use concept embracing the overall value of both the 590 and the 569 North Colony Street parcels. Accordingly, the plaintiffs' appraiser posits the take of 590 North Colony Street as a portion of the entire assemblage of both parcels, whereas defendant's appraisers presented the court with stand alone appraisals of 590 North Colony Street, giving no consideration to the consequences of the take on the 569 North Colony Street parcel.
The appraisers were agreed that the neighborhood, 590 North Colony Street and 569 North Colony Street, presents poor prospects for residential development. The present mix is about 70 percent residential, 25 percent industrial and 5 percent retail. In the immediate vicinity of both parcels are two taverns and an autobody shop. The parcel involved in the take is abutted by an industrially zoned parking lot to the south and residential property to the north. Defendant's original appraisal (Plaintiffs' Exh. E) establishing evaluation as of May 17, 1994, suggested the property may best be suited as additional land to an abutting landowner finding the site capable of supporting development. This appraiser found that the highest and best use would be residential or use in conjunction with an abutting owner. As noted, the abutter to the north enjoys an industrial zone status. This appraiser used residential comparables to determine the value of the land as a stand alone parcel and did not consider either the probability of a zone change to industrial use despite the fact that the City's master plan projected such a change in the future or the fact that 590 North Colony Street abutted an industrial zone.
The City's second appraiser established value as of April 21, 1995, on a stand alone basis also using residential comparables. The appraisal noted a mixed neighborhood, now 50 percent residential rather than 70 percent; 15 percent retail and 35 percent industrial, describing the parcel as an illegal, CT Page 4130 nonconforming use approved only for the parking of vehicles (Plaintiffs' Exh. C). With the highest and best use deemed residential, this appraisal did not consider the City's master plan which projected industrial use for this area but did note but not credit in any way the significance that the property borders on an industrial zone to the southwest.
It is apparent to the court that defendant's appraisals gave considerable weight to both the City's citation to the owner for nonconforming use of the premises at 590 North Colony Street and to the City's denial of several petitions for zone changes to that parcel submitted by the owners of the scrap metal collecting facility at 569 North Colony Street, and the premises at 590 North Colony Street.
It is a given that municipalities are highly unlikely to grant a zone change to the owners of a nonconforming use particularly when the expansion involves a use as undesirable as a junkyard. It does not follow, however, that an owner's petition for a zone change for a light industrial building and use on 590 Colony Street would meet the same opposition. The court believes that it is reasonably probable that such a petition would be successful in view of the presence of an abutting industrial neighbor and the forecast of the master plan.
Both of the defendant's appraisers valued the land at 590 Colony Street as residential with meager prospects for development as such; the appraisal valuation of May 17, 1994, placed a square foot value of .90/sq. ft. on the land; the appraisal valuation of April 21, 1995, placed a square foot value of 1.05/sq. ft. on the land. Each included the contributory value of the garage located thereon to arrive at the same estimated market value via the sales comparison approach of $35,000 for the land and building located at 590 North Colony Street.
The court finds that the defendant's estimate of the fair market value of the land in the parcel taken fails to consider the enhanced value this land would generate for an owner prepared to utilize it for light industrial purposes. The court concludes that a petition from such an owner would enjoy a reasonable probability that a zone change petition for such a use would be successful.
Plaintiffs' appraiser analyzed both 569 North Colony Street and 590 North Colony Street as one unified whole inasmuch as both CT Page 4131 properties were held in the same ownership and were operated as a scrap metal business with a North Colony Street parcel utilized to park and garage vehicles. The appraiser examined sales of four properties including two industrial buildings and two warehouses or storage buildings to support a sales comparison approach. Analysis of these sales permitted the appraiser to determine a unit price per square foot of building area which he applied to the primary building at 569 North Colony Street. Such a unit price includes but does not differentiate the contributory value of the land in each of these sales. After analyzing these sales, the appraiser was able to give an opinion of the fair market value of both the 569 North Colony and 590 North Colony Street parcels before and after the taking of 590 North Colony Street as of March 29, 1995. Using this approach, the plaintiffs' appraiser found:
 a value before the take of $142,500, the value after the take, $59,500 damages resulting from the take: $83,000
The court finds that this technique permits the court to award just damages to the owner for the actual land taken, 590 North Colony Street, and reflects somewhat the potential of this land for industrial development and also permits the court to award just damages to the owners for the diminution in value of the remaining land; i.e., 569 North Colony Street, caused by the partial take. The court's own analysis using the before and after valuation approach based upon the evidence adduced at the hearing and a viewing of both properties in the immediate neighborhood is as follows:
Value before the take: $142,500
 Value after the take: 70,000 --------- Damages as a result of the take: $ 72,500
This sum of $72,500 is reduced by the deposit credit of $24,000 and the sum of $29,975, which the court will allow as a remediation and restoration cost of the site taken.
Judgment may enter for the plaintiff for the further sum of $18,525, in addition to the $24,000 already paid, together with interest on said further sum at the rate of 10 percent from the date of taking to the date of the payment, together with costs and an allowance of $3500 for plaintiffs' appraisal, and an CT Page 4132 allowance of $450 for the testimony of Arthur B. Estrada, the plaintiffs' appraiser.
Dorsey, J. Judge Trial Referee